UNITED NEW JERSEY RAILROAD AND CANAL COMPANY AND THE PENNSYLVANIA RAILROAD COMPANY, LESSEE, PLAINTIFFS IN ERROR, v. DAVID BAIRD ET AL., THE STATE BOARD OF ASSESSORS ET AL., DEFENDANTS IN ERROR.

Argued November 21, 1907—Decided January 7, 1908.

The legislature of this state on the 4th of March, 1869, passed an act entitled "An act relative to transit duties," which provided that all railroad and canal companies theretofore paying transit duties to the state should thereafter pay each year, in quarterly payments, to the treasurer of the state, a tax of one-half of one per cent. upon the cost of their respective properties and works not otherwise taxed, until the legislature should "by general law impose a uniform state tax equally applicable to all railroad and canal corporations of this state," and that such companies should

then pay such uniform tax. It contained a provision that any corporation having a contract with the state in reference to taxation should not be affected by its provisions unless within three months from the passage thereof the act and its provisions should be accepted by the board of directors of such corporation in place of said contract. Each of the several railroad and canal corporations which were subsequently merged into the United New Jersey Railroad and Canal Company had such a contract. They each accepted the provisions of the act of 1869 within the time provided thereby. In the year 1884 the legislature passed a general act for the taxation of railroad and canal property. *Held,* that this later enactment is a general law imposing a uniform state tax equally applicable to all railroad and canal corporations of this state, and that by the express terms of the contract, created between the state and the United companies by the passage of the act of 1869 by the legislature and its acceptance by the United companies, the latter are required to pay taxes assessed upon their property under the act of 1884.

On error to the Supreme Court.

For the plaintiffs in error, *James B. Vredenburgh* and *Richard V. Lindabury.*

For the defendants in error, *Robert H. McCarter,* attorney-general, *Bennet Van Syckel* and *John R. Hardin.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The writ of error in this case brings up for review a judgment of the Supreme Court affirming a tax assessed upon property of the plaintiffs in error by the state board of assessors, under the provisions of the act for the taxation of railroad and canal property (originally enacted in the year 1884), as amended by the supplements of April 5th and April 18th, 1906. *Pamph. L., pp.* 121, 220.

The validity of the assessment was attacked in the Supreme Court, and is challenged here, upon the ground that the Tax act of 1884, as amended by the supplements just referred to, violates both the provision of our state constitution, which requires property to be assessed for taxation under general laws, and by uniform rules, according to its true value, and also the provision of the federal constitution, which prohibits

a state from denying to any person within its jurisdiction the equal protection of the laws. It was further contended before the Supreme Court, and is insisted here, that even if the act of 1884, as amended by these two supplements, is considered to be constitutional, the property of the plaintiffs in error is not taxable under it, for the reason that they have an irrepealable contract with the state, which provides the only method by which, and the rate at which, their property can be taxed.

In an opinion delivered by us at the present term, in the case of the United New Jersey Railroad and Canal Co. et al. v. Parker, Collector, the changes wrought by the supplements of April 5th and April 18th, 1906, in the original act of 1884 were fully considered, and the conclusion expressed that those changes did not, when engrafted upon the original act, render the legislative scheme obnoxious either to the state or to the federal constitution. The validity of the mode of taxation thus provided must, for the reasons stated in that opinion, be accepted as established. The only matter which now requires consideration, therefore, is the effect of the irrepealable contract of the plaintiffs in error upon the tax in question.

The various acts of the legislature which culminated in the contract upon which the plaintiffs in error rely are fully set out in the opinion of the Supreme Court, and a recital of them now is unnecessary, a reference to the opinion of the lower court being all that is required for information upon the subject. By such reference it will appear that at the time of the meeting of the state legislature in the year 1869 the several railroad and canal companies which were subsequently consolidated into the United New Jersey Railroad and Canal Company had contracts with the state under which they were paying into the state treasury annually a certain sum for each passenger and each ton of freight carried by them, in lieu of all other taxes or imposts. On the 4th of March of that year an act was passed entitled "An act relative to transit duties" (*Pamph. L.* 1869, *p.* 226), which provided (1) that from and after the passage of the act all transit duties, whether on passengers or freight, should be abolished; (2) that all companies theretofore paying transit duties to the state should

thereafter pay each year, in quarterly payments, to the treasurer of the state, a tax of one-half of one per cent. upon the cost of their respective works, including all their property of every description not otherwise taxed, until the legislature should "by general law impose a uniform state tax equally applicable to all railroad and canal corporations of this state," and that said companies should then pay such uniform tax, and that until such general law should be passed no company theretofore paying transit duties as aforesaid should in any year thereafter pay a less sum as tax to the state than that paid by it for taxes and duties of all kinds for the year 1868, and that said amount should be paid by them in equal quarterly payments, and that no other tax or impost should be levied or assessed upon said companies; (3) that the act should not apply to any corporation having a contract with the state in reference to taxation, unless within three months from the passage thereof the act and its provisions should be accepted by the board of directors of such corporation in place of said contract, and a certificate of such acceptance, under the corporate seal of such corporation, should be filed in the office of the secretary of state. On the 19th of the following April the boards of directors of the several companies which were afterward consolidated into the United New Jersey Railroad and Canal Company accepted this act and its provisions "in lieu of all [then] existing arrangements and laws for the taxation of the said companies, and each and every of them, and of all contracts with the state therefor," and sixteen days later filed a certificate of such acceptance in the office of the secretary of state.

The effect of this statute and its acceptance by the companies was to supersede all pre-existing contracts between them and the state upon the subject of taxation, and to substitute a new contract in the place thereof, and it is this new contract which the plaintiffs in error contend exempts them from taxation under the act of 1884 and its supplements.

In the year 1872 the act which consolidated these companies into the United New Jersey Railroad and Canal Company was passed, by the terms of which the consolidated

company was vested with all the rights, titles, powers, franchises, privileges, property, immunity and advantages theretofore conferred upon the constituent companies, and made subject to all the duties and obligations then existing upon or made by such companies. *Pamph. L.* 1872, *p.* 567. A year later the legislature ratified and confirmed a nine-hundred-and-ninety-nine-year lease made by the United companies to the Pennsylvania Railroad Company. *Pamph. L.* 1873, *p.* 1298. By the terms of that lease "all the franchises, rights and privileges" of the lessors were granted, demised and farm let to, and "all assessments, taxes, charges, transit duties and imposts whatsoever" were agreed to be paid by, the lessees. A considerable part of the argument of counsel on both sides was devoted to a discussion of the question whether, by these two last-mentioned acts, the partial tax exemption provided by the contract of 1869 was confirmed in the United New Jersey Railroad and Canal Company, and passed to the Pennsylvania Railroad Company under its lease. The view which we take of the case, however, does not make the determination of this question necessary. The rate of taxation fixed by that contract, viz., one-half of one per cent. upon cost, was not perpetual. It was to prevail only until the legislature should pass *a general law* imposing *a uniform state tax* equally applicable to all the railroad and canal corporations of the state, and when such a law was passed the scheme of taxation created by it was to be operative upon the property of the contracting companies as fully as upon that of the other railroad and canal companies of the state. The Railroad Tax act of 1884 was, in our opinion, such a law. It was expressly declared by this court, in the case of *Central Railroad Co.* v. *State Board of Assessors,* 19· *Vroom* 146, to be a general law, assessing taxes by a uniform rule upon the property of all railroad and canal corporations of the state. It was also determined in that case that the act imposed a single tax upon the property of such companies, and not two independent taxes upon arbitrarily selected portions of such property. See *United New Jersey Railroad and Canal Co.* v. *Parker, Collector, supra.* The determination of these matters by this

court in the earlier case we accept as final. The only open question, therefore, which the present case presents is whether the single tax imposed by the act is a *state tax* within the meaning of those words as used in the contract of 1869.

It is manifest, we think, that the expression "state tax" was used in the contract for the purpose of excluding the idea that the legislature should thereafter have the power to subject the property of the contracting companies to taxation by the local boards of the various taxing districts in which it should be found. Bearing this in mind, the solution of the question is not difficult. By the terms of the act of 1884 the tax provided for thereby is assessed by a *state* board; it is payable into the *state* treasury; if unpaid after the due day it becomes a debt due from the company to the *state,* and is made a lien upon all the lands and tangible property and franchises of the company *in the state,* and an action at law or in equity is given to the *state* for its collection. *Gen. Stat., p.* 3327, §§ 9, 10. That such a tax is not a local tax needs no demonstration, and if not a local tax it must necessarily be a state tax.

But it is argued that the language of the contract of 1869 shows that the state tax contemplated by it was a tax the proceeds of which should be used solely for the purpose of carrying on the state government and maintaining state institutions, and it is said that the tax provided for by the act of 1884 is not such a tax, for the reason that it is to be used only in part for such purposes, a considerable portion of it being required to be paid by the fiscal officers of the state to the various taxing districts in which the real estate of the several railroad and canal companies, other than "main stem," is located, to be used by such taxing districts for local purposes. *Gen. Stat., p.* 3334, § 11. We find nothing in the language of the contract of 1869 which shows an intent to limit the state in the disposition of the moneys raised by it by the taxation of railroad and canal property. For more than a half century before the making of this contract it had been, and has ever since continued to be, the practice of the state to distribute among its various municipalities each year a con-

siderable portion of the moneys raised by state taxation for the purpose of aiding in the support of the free public schools located in those municipalities, and it is not to be presumed, in the absence of words clearly showing such an intent, that the parties to the contract intended that the state should have less freedom in expending the moneys which it might thereafter raise by "a general law imposing a uniform state tax equally applicable to all railroad and canal corporations of this state" than it exercises with relation to other moneys raised from the taxation of other property in the state. On the contrary, as we read the contract, the right of the state to deal as it should deem proper with the moneys raised by the taxation of railroad and canal property is left absolutely untrammeled by it.

We conclude, therefore, that the United New Jersey Railroad and Canal Company and its lessee, the Pennsylvania Railroad Company, were, by the express terms of the contract which they invoke, taxable under the Railroad Tax act of 1884.

The engrafting upon that act of the supplements of April 5th and April 18th, 1906, as we have already decided in *United New Jersey Railroad and Canal Co.* v. *Parker, Collector, supra,* did not change its character. It still remains a general law, imposing a uniform state tax equally applicable to all railroad and canal corporations of the state, and so long as it retains those characteristics the plaintiffs in error are taxable under it.

The judgment under review will be affirmed.

*For affirmance*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J.    12.

*For reversal*—None.